UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ERICK PARKER                                                              PLAINTIFF

V.                                                 CIVIL ACTION NO. 3:18-CV-646-DPJ-FKB

TYSON FOODS, INC., ET AL.                                              DEFENDANTS

ORDER

Defendants seek summary judgment in this failure-to-promote race-discrimination case. They also ask the Court to strike a portion of a witness's affidavit. For the following reasons, their Motion for Summary Judgment [38] is denied and their Motion to Strike [43] is now moot.

I.      Facts and Procedural History

Parker, an African-American male, began his employment at the Central Industries animal by-product rendering plant in Forest, Mississippi, in 2006.[1] He initially worked as a feather dumper, but by October 2006, he had moved to the position of maintenance technician. The plant operates 24 hours a day, and four teams of maintenance technicians work in separate shifts, with two teams each covering half of the day shifts in a week and two teams covering the night shifts. Each shift has its own maintenance supervisor, who oversees the team and processes necessary paperwork. Tyson Foods employs a proficiency-level classification system for its maintenance technicians, with levels ranging from class 3 (the lowest level) to class 8 (the highest level). To achieve a higher level—and earn a corresponding pay raise—a technician must take an online test.

---

[1] Central Industries is a wholly owned subsidiary of Tyson Farms, Inc. Tyson Farms, Inc., is a wholly owned subsidiary of Tyson Foods, Inc., which, along with Central Industries, is named as a defendant in this lawsuit.

In January 2007, Parker was promoted to lead maintenance technician for his shift. In 2017, Parker tested up to a class 7 maintenance technician. He tried to take the class 8 test, but due to technical difficulties, he was unable to access the test without having to re-test at all the levels he had already achieved, which he chose not to attempt.

In November 2017, a night-shift maintenance supervisor position became vacant for the first time in several years. Parker expressed an interest, and while he was initially given bad information about how to apply from both the maintenance manager and the human-resources manager, he timely submitted an application. Three other candidates applied: Toronto Parker ("Toronto"), an African-American lead maintenance technician for the plant's other night shift; Brandon Arinder, a Caucasian supervisor at a processing plant; and Raymond Merrell, a Caucasian lead maintenance technician on one of the day shifts. Rumors around the plant circulated that Merrell—the only candidate who had achieved class 8 status—was favored to get the job.

Human Resources Manager Wanda Stevenson and Maintenance Manager Darrel Anderson interviewed the four candidates on November 20, 2017. Parker first learned that his interview would take place at 8 a.m. that day upon coming off a 12-hour shift at 7 a.m. Following the interviews, Stevenson selected Merrell for the position. Believing his non-selection was based on his race, Parker filed an EEOC charge in January 2018, and, after receiving a right-to-sue letter, filed this race-discrimination case.

II. Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after

adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

III.     Analysis

Motions for summary judgment in Title VII cases are addressed under the familiar *McDonnell-Douglas* burden-shifting framework. Under that test,

> a plaintiff challenging a failure to promote must first establish a prima facie case, demonstrating that (1) he was not promoted, (2) he was qualified for the position he sought, (3) he fell within a protected class at the time of the failure to promote, and (4) that the defendant either gave the promotion to someone outside of that protected class or otherwise failed to promote the plaintiff because of his race.

*Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346–47 (5th Cir. 2013); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

3

> If the plaintiff meets this obligation, he raises an inference of unlawful discrimination, which shifts the burden of production to the defendant to proffer a legitimate, nondiscriminatory reason for not promoting the plaintiff. If the defendant satisfies this burden, the onus shifts back to the plaintiff to prove either that the defendant's articulated reason is merely a pretext for race discrimination (the pretext alternative) or that the defendant's reason, while true, is only one of the reasons for its decision, and another "motivating factor" is the plaintiff's protected characteristic (the mixed-motives alternative).

*Autry*, 704 F.3d at 347 (footnote omitted).

### A. Prima Facie Case

In their opening memorandum, Defendants "assume[d]" for purposes of the summary-judgment motion "that Mr. Parker will be able to make out a *prima facie* case." Defs.' Mem. [39] at 8. Relying on that assumption, Parker ignored the prima facie case in his response, prompting Defendants to argue in reply that they never conceded the point and are now entitled to summary judgment. *See* Defs.' Reply [45] at 5. But Parker was not required to address this issue because Defendants failed to adequately identify it as a basis for summary judgment. *See* Fed. R. Civ. P. 56(a), (c)(1).

In any event, the elements of the prima facie case are easily satisfied. Parker, an African American, is a member of a protected class, he did not receive the promotion in question, and a Caucasian male received the promotion. Finally, Stevenson, the decisionmaker, stated in her declaration, submitted by Defendants in support of their summary-judgment motion, that all four candidates who applied for the maintenance supervisor position "met the minimum qualifications" for the job. Stevenson Decl. [38-1] ¶ 12. Parker states a prima facie case of race discrimination.

### B. Legitimate, Non-Discriminatory Reason and Pretext

Defendants have met their burden to articulate a legitimate, non-discriminatory reason for not offering the promotion to Parker: "because of [Merrell's] reliability, his [c]lass 8 status, and

4

his prior industrial safety experience," they considered him more qualified for the position than Parker. Defs.' Mem. [39] at 8.

So the burden is on Parker to demonstrate pretext, and he can do so in one of two ways: (1) "through evidence that []he was '"clearly better qualified" (as opposed to merely better or as qualified' than the chosen employee," or (2) "by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Roberson-King v. La. Workforce Comm'n, Office of Workforce Dev.*, 904 F.3d 377, 381 (5th Cir. 2018) (quoting *EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995); *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). Parker attempts both avenues.

"To meet h[is] burden to show that []he was clearly better qualified, the plaintiff 'must present evidence from which a jury could conclude that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."'" *Roberson-King*, 904 F.3d at 381 (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 923 (5th Cir. 2010)). "[T]he bar is set high for this kind of evidence." *Moss*, 610 F.3d at 923 (quoting *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 357 (5th Cir. 2001)). Indeed the "evidence must be more than merely subjective and speculative." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996). Parker's evidence falls short.

Parker points to the respective job applications he and Merrell submitted, noting that he "listed fourteen categories of skills" and provided a "fulsome list" of accomplishments, whereas Merrell's application listed no accomplishments and cited only his class 8 status under skills. Pl.'s Mem. [42] at 6, 7. Parker notes that he had a two-year certificate in carpentry from East Central Community College, while Merrell's education topped out at receipt of his G.E.D. Parker also asserts that he had been with the company for longer, had more time working in the

5

maintenance department, and had a clean criminal record, whereas Merrell had a felony criminal conviction for burglary. Finally, he offers the subjective opinion of fellow applicant Toronto that Toronto and Parker "were more qualified than [Merrell] based on [their] experience working nights and running crews at night and the other job qualifications listed for the posting." T. Parker Aff. [41-13] ¶ 7.

Setting aside Toronto's subjective opinion, and assuming the Court believed that the evidence shows Parker was, in fact, more qualified than Merrell, it cannot be said that Parker was so clearly more qualified that no reasonable person would have selected Merrell over him. Both were qualified for the position, and while Parker may have had more experience and a higher education level, Merrell had achieved a higher classification level than Parker. Defendants' professed "choice to value [Merrell's qualifications] over [Parker's] strengths is within the realm of reasonable business judgments." *Roberson-King*, 904 F.3d at 382 (citing *Martinez v. Tex. Workforce Comm'n-Civil Rights Div.*, 775 F.3d 685, 688 (5th Cir. 2014) ("[A]n employee's 'better education, work experience, and longer tenure with the company do not establish that he is clearly better qualified.'" (quoting *Price v. Fed. Express Corp.*, 283 F.3d 715, 723 (5th Cir. 2002)))). Parker has not established pretext by demonstrating that he was clearly more qualified for the promotion than Merrell.

So the question is whether Parker has evidence showing that Defendants' explanation is false or unworthy of credence. "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Laxton*, 333 F.3d at 578. "[A] plaintiff need only bring evidence that enables the jury to disbelieve that the employer's proffered justification truly motivated the adverse employment action." *Id.* at 580 n.2 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000)).

Defendants proffered three qualities they say led to Merrell's selection for promotion: his reliability, his experience as a safety clerk, and his class 8 status. But Stevenson—the decisionmaker—testified that Merrell's class 8 status was the sole basis for her decision. Stevenson Dep. [41-2] at 20, 23. So Parker has pointed to evidence that the first two proffered justifications for promoting Merrell did not "truly motivate[] the adverse employment action." *Laxton*, 333 F.3d at 580 n.2

As to the class 8 designation, Stevenson testified that she did not "know specifically what eight tests for that's not covered in seven." Stevenson Dep. [41-2] at 13. And maintenance supervisor Marquis Harper testified that the "technical training at the level eight" did not "give [Merrell] more information than [Parker] had about being a maintenance supervisor." Harper Dep. [41-4] at 22. While this is a close call, the Court finds sufficient evidence in the record to create a jury question on whether Merrell was selected over Parker as a result of race discrimination. *See Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) ("Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986))). The motion for summary judgment is therefore denied.

    C.    Motion to Strike

Defendants also ask the Court to strike portions of Toronto Parker's affidavit. But because the Court has not relied on Toronto's affidavit in ruling on the summary-judgment motion, the motion is moot.

IV.    Conclusion

The Court has considered all arguments. Those not addressed would not have changed

7

the outcome.  For the foregoing reasons, Defendants' Motion for Summary Judgment [38] is denied, and the Motion to Strike [43] is moot.

**SO ORDERED AND ADJUDGED** this the 3rd day of January, 2020.

s/ *Daniel P. Jordan III*<br>CHIEF UNITED STATES DISTRICT JUDGE